**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |
|---|---|
| FINGON, LLC,<br>   *Plaintiff*,<br><br>   v.<br><br>SAMSUNG ELECTRONICS CO., LTD., and<br>SAMSUNG ELECTRONICS AMERICA, INC.,<br>   *Defendants*. | Civil Action No. <u>2:25-cv-1101</u><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT AND DAMAGES
<u>AND DEMAND FOR JURY TRIAL</u>**

Plaintiff Fingon, LLC ("Fingon" or "Plaintiff") files this Complaint for Patent Infringement and Damages against Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively, "Samsung" or "Defendants") and alleges as follows:

**<u>INTRODUCTION</u>**

1.   The novel inventions disclosed in U.S. Patent Nos. 9,432,348 (the "'348 Patent"); 9,742,735 (the "'735 Patent"); 10,270,776 (the "'776 Patent"); 10,484,338 (the "'338 Patent"); and 11,201,869 (the "'869 Patent") (collectively, the "Asserted Patents") in this matter were invented by OLogN Technologies, a research and development company that was focused on developing ground-breaking security technologies aiming to curb both malware impact and phishing threats in both consumer and enterprise environments.

**<u>THE PARTIES</u>**

2.   Plaintiff is the current owner and assignee of the Asserted Patents.

3.   Plaintiff is a Texas limited liability company with its principal place of business located at 2321 Whitney Avenue, 3rd Floor Suite 301 PMB #1391, Hamden, Connecticut 06518.

4.      On information and belief, Defendant Samsung Electronics Co., Ltd. ("SEC") is a company organized and existing under the laws of the Republic of Korea, with its principal place of business located at 129 Samsung-Ro, Yeongtong-Gu, Suwon-Shi, Gyeonggi-Do, 16677, Republic of Korea. SEC's Information Technology & Mobile Communications division is responsible for the design, manufacture, and sale of mobile devices, such as smartphones, and related software, applications, and payment services that operate on cellular networks around the world and in the United States.

5.      On information and belief, Defendant Samsung Electronics America, Inc. ("SEA") is a corporation organized and existing under the laws of the State of New York with its principal place of business at 85 Challenger Road, Ridgefield Park, New Jersey 07660. On information and belief, SEA is a wholly owned subsidiary of SEC. SEA has a business location in this District at 6625 Excellence Way, Plano, Texas 75023. Defendant SEA may be served at least via its registered agent for service of process in Texas, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

6.      On information and belief, Defendants directly and/or indirectly develop, design, manufacture, distribute, market, offer to sell and/or sell infringing products and services in the United States, including in the Eastern District of Texas, and otherwise direct infringing activities to this District in connection with their products and services as set forth in this Complaint.

## JURISDICTION

7.      This civil action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, including without limitation 35 U.S.C. §§ 271, 281, 283, 284, and 285. Accordingly, this Court has subject matter jurisdiction under, *inter alia*, 28 U.S.C. §§ 1331 and 1338(a).

8.      This District has general and specific personal jurisdiction over Defendants because Defendants have committed acts, directly or through intermediaries, in this District, giving rise to this action; are present in and transact and conduct business in this District and the State of Texas; and transact and conduct business with residents of this District and the State of Texas.

9.      Plaintiff's causes of action arise, at least in part, from Defendants' contacts with and activities in this District and the State of Texas.

10.     Defendants have infringed the Asserted Patents within this District and the State of Texas by making, using, selling, offering for sale, and/or importing in or into this District and elsewhere in the State of Texas, products that infringe the Asserted Patents. Defendants, directly and through intermediaries, make, use, sell, offer for sale, import, ship, distribute, advertise, promote, and/or otherwise commercialize such infringing products in or into this District and the State of Texas. Defendants regularly conduct and solicit business in, engage in other persistent courses of conduct in, and/or derive substantial revenue from goods and services provided to residents of this District and the State of Texas.

11.     This Court has personal jurisdiction over Defendants pursuant to TEX. CIV. PRAC. & REM. CODE § 17.041 *et seq*.

12.     Personal jurisdiction exists over Defendants because Defendants have minimum contacts with this forum as a result of business regularly conducted within this District and the State of Texas, and, on information and belief, specifically as a result of, at least, committing the tort of patent infringement within this District and the State of Texas.

13.     This Court also has personal jurisdiction over Defendants, in part, because Defendants each do continuous and systematic business in this District, including by providing

infringing products and services to the residents of this District that Defendants knew would be used within this District, and by soliciting business from the residents of this District.

14.     For example, Defendants are subject to personal jurisdiction in this Court because, *inter alia*, Defendants through agents regularly solicit and transact business in this District and have an established place of business in this District. Accordingly, this Court's jurisdiction over the Defendants comports with the constitutional standards of fair play and substantial justice and arises directly from Defendants' purposeful minimum contacts with the State of Texas.

15.     This Court also has personal jurisdiction over Defendants because Defendants have made their products available for, at least, purchase and use within this District.

16.     Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400(b) because each Defendant is subject to personal jurisdiction in this Judicial District and has committed acts of infringement in this Judicial District. Each Defendant, through its own acts and/or through the acts of each other Defendant acting as its agent, representative, or alter ego, makes uses, sells, offers to sell, and/or imports infringing products within this Judicial District, has a continuing presence within the Judicial District, and has the requisite minimum contacts with the Judicial District such that this is a fair and reasonable venue.

17.     For example, on information and belief, SEA maintains a regular and established place of business in this judicial district a 6625 Excellence Way, Plano, Texas 75023 and has committed acts of infringement in this District.  Further, on information and belief, SEC directs and controls the actions of SEA such that it too maintains a regular and established place of business in this judicial district at 6625 Excellence Way, Plano, Texas 75023 and has committed acts of infringement in this District.

18.     Additionally, venue is proper as to SEC, a foreign corporation, because suits against foreign entities are proper in any judicial district under 28 U.S.C. § 1391(c)(3).

19.     Defendants have not contested proper venue and exercise of personal jurisdiction in this District for patent infringement in actions in the past. *See, e.g.*, Answer, ¶¶ 13, 18, *Cal. Inst. Tech v. Samsung Elecs. Co., Ltd. et al.*, No. 2:21-cv-00446, Dkt. 19 (E.D. Tex. Apr. 5, 2022); Answer to Amended Complaint, ¶¶ 6, 7, *Jawbone Innovations, LLC v. Samsung Elecs. Co., Ltd. et al.*, No. 2:21-cv-00186, Dkt. 27 (E.D. Tex. Dec. 9, 2021).

## THE ASSERTED PATENTS

20.     The inventions contained in the Asserted Patents in this case relate to groundbreaking improvements in microprocessor security, with particular application in consumer electronics such as smartphones, tablets, and other electronic devices.

### U.S. PATENT NO. 9,432,348

21.     On August 30, 2016, the United States Patent and Trademark Office duly and legally issued the '348 Patent, entitled "Secure Zone for Secure Purchases." A true and correct copy of the '348 Patent is attached hereto as **Exhibit 1**.

22.     Fingon is the owner and assignee of all right, title, and interest in and to the '348 Patent, including the right to assert all causes of action arising under the '348 Patent and the right to sue and obtain any remedies for past, present, or future infringement.

23.     The '348 Patent describes, among other things, an apparatus that includes a secure zone for executing tasks, in which the secure zone may be configured to execute a task having a subtask. '348 Patent, Abstract.

24.     The '348 Patent further explains: "The task and subtask may have respective executable code and may be digitally signed by respective code providers." *Id.*, Abstract; *see also*

5

*id.* at 9:4–10:22 & Fig. 3A. "The secure zone may be further configured to apply respective sets of permissions while the respective executable code of the task and subtask are executed. The respective set of permissions for the task may be based on at least one of information associated with the signed task and information in a digital certificate of the respective code provider for the task. The respective set of permissions for the subtask may be based on at least one of information associated with the signed subtask and information in a digital certificate of the respective code provider for the subtask." *Id.*, Abstract. Figure 1 of the '348 Patent shows a block diagram of a portion of a system designed in accordance with the claimed invention. *See id.*, Fig. 1; *see also id.* at 2:33–5:36 (describing Fig. 1 in detail).

25.    The novel features of the invention are recited in the claims. For example, claim 1 of the '348 Patent recites:

> 1. An apparatus, comprising:
>
> a secure zone comprising an interface to a non-secure zone, the secure zone further configured to:
>
> execute a task having one or more subtasks, wherein the task and the subtasks have respective executable code for one more secure transactions, the task and the subtasks are digitally signed by respective code providers, and execution is switched between the task and the subtasks; and
>
> apply respective sets of permissions describing access to certain portions of the secure zone while the respective executable code of the task and subtasks are executed, wherein the respective set of permissions for the task are based on at least one of information associated with the signed task and information in a digital certificate of the respective code provider for the task, and wherein the respective set of permissions for the subtasks are based on at least one of information associated with the signed subtasks and information in a digital certificate of the respective code provider for the subtasks.

'348 Patent, Claim 1.

<u>U.S. PATENT NO. 9,742,735</u>

26.     On August 22, 2017, the United States Patent and Trademark Office duly and legally issued the '735 Patent, entitled "Secure Zone for Digital Communication." A true and correct copy of the '735 Patent is attached hereto as **Exhibit 2**.

27.     Fingon is the owner and assignee of all right, title, and interest in and to the '735 Patent, including the right to assert all causes of action arising under the '735 Patent and the right to sue and obtain any remedies for past, present, or future infringement.

28.     The '735 Patent describes, among other things, an apparatus that includes a secure zone for executing tasks, in which the secure zone may be configured to execute a task and to assume control over an output to a screen while the apparatus is operating in a secure mode and to transfer control over the output to the screen to a non-secure zone while the apparatus is operating in a non-secure mode.  '735 Patent, Abstract.

29.     The novel features of the invention are recited in the claims. For example, claim 1 of the '735 Patent recites:

> An apparatus, comprising:
> a screen;
> a non-secure zone;
> a secure zone comprising:
>> a memory inaccessible to the non-secure zone;
>> a non-volatile storage configured to store at least one digital certificate and at least one encryption key, the at least one digital certificate comprising information representing a task signer;
>> a secure processor configured to execute a task associated with the at least one digital certificate; and
>> a supervisor configured to:
>>> control access to the at least one digital certificate and the at least one encryption key;

assume control over an output of the screen when the apparatus operates in a secure mode, wherein the secure mode may be a partial screen secure mode or a full screen secure mode;

control execution of the task by the secure processor;

an indicator operatively controlled by the supervisor;

wherein the supervisor is configured when the apparatus operates in the partial screen secure mode to:

delegate control of a first portion of the screen to the task executing on the secure processor;

display in a second portion of the screen the information representing the task signer from the at least one of the digital certificate; and

activate the indicator;

wherein the supervisor is configured when the apparatus operates in a full screen secure mode to:

delegate control of the entire screen to the task executing on the secure processor;

deactivate the indicator; and

wherein the supervisor is configured when the apparatus operates in a non-secure mode to transfer control over the output of the screen to the non-secure zone.

'735 Patent, Claim 1.

30.    Figure 1 of the '735 Patent, reproduced below, also shows a block diagram of a portion of a system designed in accordance with the claimed invention. *See* '735 Patent, Fig. 1. As shown in Figure 1, the device 120 may include various components, including a non-secure zone 152 which may have an operating system 111 and various applications 112, and a secure zone 150 which may have a supervisor 160, decoder 122 and image processor 171. A mixer 181 allows the secure zone 150 to control the screen 123. *See id*. at 2:30–5:28.



'735 Patent, Fig. 1.

## U.S. Patent No. 10,270,776

31.    On April 23, 2019, the United States Patent and Trademark Office duly and legally issued the '776 Patent, entitled "Secure Zone for Secure Transactions." A true and correct copy of the '776 Patent is attached hereto as **Exhibit 3**.

32.    Fingon is the owner and assignee of all right, title, and interest in and to the '776 Patent, including the right to assert all causes of action arising under the '776 Patent and the right to sue and obtain any remedies for past, present, or future infringement.

33.    The '776 Patent claims priority to the '348 Patent. The '776 Patent describes, among other things, an apparatus comprising a secure zone configured to execute a task and a

subtask, in which the task and subtask may have respective executable code and sets of permissions. '776 Patent, Abstract.

34.    The novel features of the invention are recited in the claims. For example, claim 1 of the '776 Patent recites:

> 1. An apparatus, comprising:
>
>> a memory configured to store data;
>>
>> a secure zone comprising an interface and configured to execute a task comprising a subtask that communicates one or more data packets over a network, wherein the memory is cleared of data related to the subtask after executing the subtask; and
>>
>> a non-secure zone coupled to the secure zone via the interface, wherein the secure zone is configured to use network capabilities of the non-secure zone to communicate the one or more data packets over the network according to the subtask, and wherein the network capabilities of the non-secure zone receive the data packets communicated from the secure zone via the interface.

'776 Patent, Claim 1.

## U.S. PATENT NO. 10,484,338

35.    On November 19, 2019, the United States Patent and Trademark Office duly and legally issued the '338 Patent, entitled "Secure Zone for Digital Communications." A true and correct copy of the '338 Patent is attached hereto as **Exhibit 4**.

36.    Fingon is the owner and assignee of all right, title, and interest in and to the '338 Patent, including the right to assert all causes of action arising under the '338 Patent and the right to sue and obtain any remedies for past, present, or future infringement.

37.    The '338 Patent claims priority to the '735 Patent. The '338 Patent describes, among other things, an apparatus that includes a secure zone for executing tasks, in which the secure zone may be configured to execute a task and to assume control over an output to a screen while the apparatus is operating in a secure mode and to transfer control over the output to the

screen to a non-secure zone while the apparatus is operating in a non-secure mode.  '338 Patent, Abstract.

38.    The novel features of the invention are recited in the claims. For example, claim 1 of the '338 Patent recites:

> 1. An apparatus, comprising:
>
> a screen;
>
> an indicator;
>
> a non-secure zone; and
>
> a secure zone comprising:
>
>> a non-volatile storage configured to store at least one digital certificate and at least one encryption key;
>>
>> a secure processor configured to execute a task comprising task certificate information representing a task signer; and
>
> a supervisor configured to:
>
>> control access to the at least one digital certificate and the at least one encryption key;
>>
>> assume control over an output of the screen when the apparatus operates in a secure mode and to transfer control over the output of the screen to the non-secure zone when the apparatus operates in a non-secure mode; and
>>
>> control operation of the indicator, wherein the supervisor activates the indicator when the apparatus operates in the secure mode and deactivates the indicator when the apparatus operates in the non-secure mode.

'338 Patent, Claim 1.

### U.S. PATENT NO. 11,201,869

39.    On December 14, 2021, the United States Patent and Trademark Office duly and legally issued the '869 Patent, entitled "Secure Zone for Secure Purchases." A true and correct copy of the '869 Patent is attached hereto as **Exhibit 5**.

40. Fingon is the owner and assignee of all right, title, and interest in and to the '869 Patent, including the right to assert all causes of action arising under the '869 Patent and the right to sue and obtain any remedies for past, present, or future infringement.

41. The '869 Patent claims priority to the '776 and '348 Patents. The '869 Patent describes, among other things, an apparatus comprising a secure zone configured to execute a task and a subtask, in which the task and subtask may have respective executable code and sets of permissions. '869 Patent, Abstract.

42. The novel features of the invention are recited in the claims. For example, claim 1 of the '869 Patent recites:

> 1. An apparatus comprising:
>
> > a secure zone comprising an interface to a non-secure zone, a secure processor, and a memory;
> >
> > the secure processor configured to:
> >
> > > execute a task having one or more subtasks, wherein the task and the subtasks have respective executable code for one or more secure transactions;
> > >
> > > store a state of the task into the memory of the secure zone; and
> > >
> > > switch execution from the executable code of the task to executable code of a first subtask,
> > >
> > > wherein after executing the first subtask, the secure processor is further configured to clear the memory of data related to the first subtask and switch execution to the executable code of the task based on the state of the task stored in the memory.

'869 Patent, Claim 1.

## SAMSUNG'S USE OF THE PATENTED TECHNOLOGY

43. Samsung is a South Korean multinational manufacturing conglomerate founded in 1938.

44.     On information and belief, Samsung makes, uses, sells, and/or offers to sell in the United States, and/or imports into the United States various electronic devices which infringe the Asserted Patents.

45.     For example, Samsung makes, uses, sells, and/or offers to sell in the United States, and/or imports into the United States the Samsung Galaxy S25 smartphone.  As described in the counts below, these and other Samsung smartphones, tablets, and other products that include Qualcomm's implementation of the TrustZone Trusted Execution Environment and hypervisor,[1] as well as Samsung's smartphones, tablets, and other products that utilize processors not provided by Qualcomm but which have corresponding functionality, and all reasonably similar products, include security technology that infringes the Asserted Patents.

## FIRST COUNT
## (Infringement of U.S. Patent No. 9,432,348)

46.     Fingon incorporates by reference the allegations set forth in the above paragraphs of the Complaint as though fully set forth herein.

47.     The claims of the '348 Patent are valid and enforceable.

48.     In violation of 35 U.S.C. § 271(a), Samsung has directly infringed and continues to directly infringe one or more claims of the '348 Patent, including at least Claim 1 of the '348 Patent, in the state of Texas, in this judicial district, and elsewhere in the United States by, among other things, making, using, selling, offering for sale, and/or importing into the United States products that embody one or more of the inventions claimed in the '348 Patent, including but not limited to its electronic devices containing SoCs or microprocessors utilizing Qualcomm's

---

[1] See, e.g., Qualcomm, "Qualcomm TEE," available at https://docs.qualcomm.com/bundle/publicresource/topics/80-70015-11/qualcomm-trusted-execution-environment.html; Qualcomm, "Qualcomm Hypervisor," available at https://docs.qualcomm.com/bundle/publicresource/topics/80-70015-11/hypervisor.html.

implementation of the TrustZone Trusted Execution Environment and hypervisor,[2] such as the Samsung Galaxy S25, as well as Samsung's electronic devices that utilize processors not provided by Qualcomm but which have corresponding functionality, and all reasonably similar products (the "'348 Patent Accused Products").

49.     The '348 Patent Accused Products contain elements identical or equivalent to each claimed element of the patented invention pointed out by at least Claim 1 of the '348 Patent.

50.     Each of the '348 Patent Accused Products comprises an apparatus.

51.     For example, the Samsung Galaxy S25 comprises a mobile smartphone apparatus that includes, for example, a Qualcomm Snapdragon 8 Elite chipset based on ARM technology.

52.     Each of the '348 Patent Accused Products comprises a secure zone comprising an interface to a non-secure zone.

53.     For example, the Samsung Galaxy S25 comprises a secure zone of a Trusted Execution Environment World ("TEE World") and a Trusted Virtual Machine ("Trusted VM"), both of which are isolated from and run completely independently of a non-secure zone comprising an Android VM in the ARM "Normal World." On information and belief, communication between the TEE World secure zone and the non-secure zone occurs through at least the Secure Monitor Call (SMC) interface. Also on information and belief, Trusted VMs also operating in the secure zone have access to the TEE World, thereby also providing an interface.

---

[2] *See, e.g.*, Qualcomm, "Qualcomm TEE," *available at* https://docs.qualcomm.com/bundle/publicresource/topics/80-70015-11/qualcomm-trusted-execution-environment.html; Qualcomm, "Qualcomm Hypervisor," *available at* https://docs.qualcomm.com/bundle/publicresource/topics/80-70015-11/hypervisor.html.



Qualcomm, "A Developer's Guide to IoT Security Part III: Trusted Execution Environment and Hypervisors," https://www.youtube.com/watch?v=q8x1yP6BWB8

54.    In each of the '348 Patent Accused Products, the secure zone is configured to execute a task having one or more subtasks, wherein the task and the subtasks have respective executable code for one more secure transactions, the task and the subtasks are digitally signed by respective code providers, and execution is switched between the task and the subtasks.

55.    For example, on information and belief, in the Samsung Galaxy S25, one Trusted Application ("TA") in the TEE World is the Visa Pay TA, a task. The Visa Pay TA executes commands and calls other Trusted Applications (i.e., subtasks), such as the Keymaster TA and the ICCC TA. Each of these TAs has respective executable code. For example, the Visa Pay TA executable code processes commands from the Samsung Pay client application using various forms of payment data, the Keymaster TA executable code provides secure key management services during those transactions, and the ICCC TA executable code verifies the secure status of the device and performs related tasks to ensure the device's integrity and security. The respective TAs (Visa Pay, ICCC, and Keymaster) each include signed metadata that contains their identity and permissions. Execution is switched between them. For example, the Visa Pay TA executes

and then calls the Keymaster TA, switching execution between the Visa Pay TA and the subtask. The Visa Pay TA also calls the ICCC TA.

56.     In each of the '348 Patent Accused Products, the secure zone is configured to apply respective sets of permissions describing access to certain portions of the secure zone while the respective executable code of the task and subtasks are executed, wherein the respective set of permissions for the task are based on at least one of information associated with the signed task and information in a digital certificate of the respective code provider for the task, and wherein the respective set of permissions for the subtasks are based on at least one of information associated with the signed subtasks and information in a digital certificate of the respective code provider for the subtasks.

57.     For example, on information and belief, in the Samsung Galaxy S25 the Secure OS enforces TA permissions derived from signed metadata, from device attestation, from inheritance from another TA, or from the TA's own properties. As an example, in the Samsung Galaxy S25 the Visa Pay TA executable file includes metadata and certificate information that provide the permissions for the TA. On information and belief, the Samsung Galaxy S25 subtask permissions are based on information associated with the signed subtask and/or its certificate. For example, the ICCC TA enforces its own permissions set forth in metadata and certificate information in its own executable file, separate from the Visa Pay TA that invokes it. Similarly, the Keymaster TA also has its own permissions embedded within the metadata segment of its TA executable file.

58.     On information and belief, Samsung has known about the '348 Patent at least since its issuance on August 30, 2016, and at least since the date of interactions between the parties concerning a foreign patent arising from the same application(s) as the '348 Patent. For instance, on information and belief Samsung has been provided with documents demonstrating Fingon's

ownership of the '348 Patent. At a minimum, Samsung has knowledge of the '348 Patent at least as of the filing of this Complaint. Samsung has had, and continues to have, the specific intent to infringe, through its deliberate and intentional infringement or, alternatively, through its willfully blind disregard of the '348 Patent by knowing there was a high probability of infringement but taking deliberate actions to avoid confirming that infringement. The filing of this action has also made Samsung aware of the unjustifiably high risk that its actions constituted and continue to constitute infringement of the '348 Patent. On information and belief, discovery will reveal additional facts and circumstances from which Samsung's knowledge and intent to infringe (or willful indifference), both before and after the filing of this action, may be inferred.

59.    Further, on information and belief, Samsung has actively induced and/or contributed to infringement of at least Claim 1 of the '348 Patent in violation of at least 35 U.S.C. § 271(b), (c), and (f).

60.    Users of the '348 Patent Accused Products directly infringe at least Claim 1 of the '348 Patent when they use the '348 Patent Accused Products in the ordinary, customary, and intended way. On information and belief, Samsung's inducements in violation of 35 U.S.C. § 271(b) include, without limitation and with specific intent to encourage infringement, knowingly inducing consumers to use the '348 Patent Accused Products within the United States in the ordinary, customary, and intended way by, directly or through intermediaries, supplying the '348 Patent Accused Products to consumers within the United States and instructing and encouraging such customers to use the '348 Patent Accused Products in the ordinary, customary, and intended way, which Samsung knew infringes at least Claim 1 of the '348 Patent, or, alternatively, was willfully blind to the infringement.

61.    On information and belief, Samsung's inducements in violation of 35 U.S.C. § 271(b) further include, without limitation and with specific intent to encourage the infringement, knowingly inducing customers to commit acts of infringement with respect to the '348 Patent Accused Products within the United States, by, directly or through intermediaries, instructing and encouraging such customers to import, make, use, sell, offer to sell, or otherwise commit acts of infringement with respect to the '348 Patent Accused Products in the United States, which Samsung knew infringes at least Claim 1 of the '348 Patent, or, alternatively, was willfully blind to the infringement.

62.    On information and belief, in violation of 35 U.S.C. § 271(c), Samsung's contributory infringement further includes offering to sell or selling within the United States, or importing into the United States, components of the patented invention of at least Claim 1 of the '348 Patent, constituting a material part of the invention.  On information and belief, Samsung knows and has known the same to be especially made or especially adapted for use in an infringement of the '348 Patent, and such components are not a staple article or commodity of commerce suitable for substantial noninfringing use.

63.    On information and belief, in violation of 35 U.S.C. § 271(f)(1), Samsung's infringement further includes without authority supplying or causing to be supplied in or from the United States all or a substantial portion of the components of the patented invention of at least Claim 1 of the '348 Patent, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred within the United States.

64.    On information and belief, in violation of 35 U.S.C. § 271(f)(2), Samsung's infringement further includes without authority supplying or causing to be supplied in or from the

United States components of the patented invention of at least Claim 1 of the '348 Patent that are especially made or especially adapted for use in the invention and not staple articles or commodities of commerce suitable for substantial noninfringing use, where such components are uncombined in whole or in part, knowing that such components are so made or adapted and intending that such components will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States.

65.    Samsung is not licensed or otherwise authorized to practice the claims of the '348 Patent.

66.    Thus, by its acts, Samsung has injured Fingon and is liable to Fingon for directly and/or indirectly infringing one or more claims of the '348 Patent, whether literally or under the doctrine of equivalents, including without limitation Claim 1.

67.    Accordingly, Samsung's infringement of the '348 Patent has been and continues to be deliberate, intentional, and willful, and this is therefore an exceptional case warranting an award of enhanced damages and attorneys' fees and costs pursuant to 35 U.S.C. §§ 284 and 285.

68.    As a result of Samsung's infringement of the '348 Patent, Fingon has suffered monetary damages, and seeks recovery, in an amount to be proven at trial, adequate to compensate for Samsung's infringement, but in no event less than a reasonable royalty with interest and costs.

69.    On information and belief, Samsung will continue to infringe the '348 Patent unless enjoined by this Court. Samsung's infringement of Fingon's rights under the '348 Patent will continue to damage Fingon, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

## SECOND COUNT
## (Infringement of U.S. Patent No. 9,742,735)

70.    Fingon incorporates by reference the allegations set forth in the above paragraphs of the Complaint as though fully set forth herein.

71.    The claims of the '735 Patent are valid and enforceable.

72.    In violation of 35 U.S.C. § 271(a), Samsung has directly infringed and continues to directly infringe one or more claims of the '735 Patent, including at least Claim 1 of the '735 Patent, in the state of Texas, in this judicial district, and elsewhere in the United States by, among other things, making, using, selling, offering for sale, and/or importing into the United States products that embody one or more of the inventions claimed in the '735 Patent, including but not limited to its electronic devices containing SoCs or microprocessors utilizing Qualcomm's implementation of the TrustZone Trusted Execution Environment and hypervisor,[3] such as the Samsung Galaxy S25, as well as Samsung's electronic devices that utilize processors not provided by Qualcomm but which have corresponding functionality, and all reasonably similar products (the "'735 Patent Accused Products").

73.    The '735 Patent Accused Products contain elements identical or equivalent to each claimed element of the patented invention pointed out by at least Claim 1 of the '735 Patent.

74.    Each of the '735 Patent Accused Products comprises an apparatus.

75.    For example, the Samsung Galaxy S25 comprises a mobile smartphone apparatus that includes, for example, a Qualcomm Snapdragon 8 Elite chipset based on ARM technology.

76.    Each of the '735 Patent Accused Products comprises a screen.

---

[3] *See, e.g.*, Qualcomm, "Qualcomm TEE," *available at* https://docs.qualcomm.com/bundle/publicresource/topics/80-70015-11/qualcomm-trusted-execution-environment.html; Qualcomm, "Qualcomm Hypervisor," *available at* https://docs.qualcomm.com/bundle/publicresource/topics/80-70015-11/hypervisor.html.

77.    For example, the Samsung Galaxy S25 includes a display screen used to render secure and non-secure content.

78.    Each of the '735 Patent Accused Products comprises a non-secure zone.

79.    For example, on information and belief the Samsung Galaxy S25 comprises an Android Virtual Machine ("Android VM") in the ARM "Normal World," in which Android and applications execute.



Qualcomm, "A Developer's Guide to IoT Security Part III: Trusted Execution Environment and Hypervisors," https://www.youtube.com/watch?v=q8x1yP6BWB8&t=5s

80.    Each of the '735 Patent Accused Products comprises a secure zone.

81.    For example, the Samsung Galaxy S25 provides a secure zone that comprises a Trusted Execution Environment World ("TEE World") and a Trusted Virtual Machine ("Trusted VM"), both of which are isolated from and run completely independently of the Android VM in the ARM "Normal World."



Qualcomm, "A Developer's Guide to IoT Security Part III: Trusted Execution Environment and Hypervisors," https://www.youtube.com/watch?v=q8x1yP6BWB8&t=5s

82.    Each of the '735 Patent Accused Products comprises a memory inaccessible to the non-secure zone.

83.    For example, on information and belief, the Samsung Galaxy S25 comprises a memory which is accessible by the TEE World and a memory which is accessible by the Trusted VM. On information and belief, these memories are inaccessible to the Android VM.  For example, the secure zone can render content to the screen in a way that the non-secure zone cannot access, indicating that secure memory buffers cannot be accessed from the non-secure zone.

84.    Each of the '735 Patent Accused Products comprises a non-volatile storage configured to store at least one digital certificate and at least one encryption key, the at least one digital certificate comprising information representing a task signer.

85.    For example, on information and belief the Samsung Galaxy S25 includes at least the Qualcomm Secure File System ("SFS"), Qualcomm Fast Trusted Storage ("FTS"), Samsung Knox Vault storage, and Qualcomm QFPROM fuses that store certificates and keys for authentication. On information and belief, the SFS and FTS are accessed by the TEE World and/or the Trusted VM through secure mechanisms. On information and belief, the QFPROM fuses store

hash values, which serve as a unique identifier that cryptographically represents a task signer, enabling verification of the task signer's identity.

> **SFS**
>
> SFS provides confidentiality, integrity, and anti-rollback support to TA and securely stores sensitive data. Any file created or stored under SFS is covered by anti-rollback protection. The SFS feature:
>
> - Uses an encryption key for each TA to ensure the confidentiality of the files.
> - Uses an HMAC key for each TA to verify the integrity of the files.
>
> Both the encryption and HMAC keys are derived using a device unique key, which depends on the secure boot state of the device. The SFS anti-rollback protection is enabled by default.
>
> When the devices are secure boot enabled, the SFS uses unique hardware keys for file data encryption and decryption to ensure they are secure from each other.

https://docs.qualcomm.com/bundle/publicresource/topics/80-70014-11/secure-file-system.html

> - Fast Trusted Storage (FTS). FTS provides trusted apps in Qualcomm Trusted Execution Environment with similar encryption service. Compared to SFS, it trades random file access for higher data throughput to the secure storage. FTS does not support rollback protection, hence data that is vulnerable to replay attacks should be stored in SFS.

https://www.qualcomm.com/content/dam/qcomm-martech/dm-assets/documents/guard_your_data_with_the_qualcomm_snapdragon_mobile_platform2.pdf

> As a core component of the Knox security platform, Knox Vault is an isolated, tamper-proof, secure subsystem with its own processor and memory. It also includes an interface to dedicated, non-volatile secure storage, which provides a secure location for storing sensitive data, such as cryptographic keys and credentials. Knox Vault can:
>
> - Store sensitive data such as hardware-backed Android Keystore keys, the Knox Device Health Attestation Key (SAK), biometric data, and blockchain credentials.

> **Credential Storage**
>
> This feature securely stores data encrypted by the Knox Vault Processor in the Knox Vault Storage. A secure channel is used to protect data transferred between the Knox Vault Processor and the Knox Vault Storage.
>
> The following data is stored in the Knox Vault Storage:
>
> - Cryptographic keys to protect biometric data
> - Blockchain keystore credentials
> - Knox Device Health Attestation Key (SAK)
>
> All data in credential storage is encrypted using a Knox Vault-unique key. This prevents the data from being decrypted in other devices.

> **StrongBox Keymaster Support**
>
> The StrongBox Keymaster is a key management module supporting various cryptographic algorithms that can be used by applications to generate keys and perform cryptographic operations with them.
>
> The Android framework provides a KeyStore API for applications to use the StrongBox Keymaster. All keys generated by the StrongBox Keymaster or imported into it are encrypted with the unique key of Knox Vault. Thus, these keys cannot be decrypted outside of the StrongBox Keymaster running on the Knox Vault Processor.

> **Knox Vault unique key**
>
> The Knox Vault unique key is written into one-time-programmable bits. This unique key is used for protecting keys imported into or generated in the Knox Vault Subsystem. Thus, a key generated in Knox Vault on one device cannot be used outside of that device.

> **Knox Vault Storage**
>
> The Knox Vault Storage is a dedicated, secure, non-volatile memory device that stores sensitive data such as the following:
>
> - Cryptographic keys such as Blockchain keys and Device keys
> - Biometric data
> - Hashed authentication credentials
>
> Like the Knox Vault Processor, the Knox Vault Storage is designed to prevent various physical and side-channel attacks, using its own secure processor, SRAM, ROM, cryptographic module, and hardware monitor which detects physical tampering.

https://docs.samsungknox.com/admin/fundamentals/whitepaper/samsung-knox-mobile-security/system-security/knox-vault/

86.     Each of the '735 Patent Accused Products comprises a secure processor configured to execute a task associated with the at least one digital certificate.

87.     For example, in the Samsung Galaxy S25 the secure processor for the TEE World and/or the secure processor for the Trusted VM runs tasks, such as Trusted Applications. For example, on information and belief, the Samsung Wallet client application, which runs in the non-secure zone, invokes the Visa Pay Trusted Application, and the secure operating system ("Secure OS") running in the TEE World dispatches the commands issued by the Samsung Wallet client application to the Visa Pay Trusted Application.

88.     Each of the '735 Patent Accused Products comprises a supervisor.

89.     For example, the Samsung Galaxy S25 provides a supervisor through the Secure OS component, which manages Trusted Applications and enforces policies in the Samsung Galaxy S25, and components which manage secure screen operations in the Samsung Galaxy S25, such as the Trusted User Interface ("TUI") components in the Trusted VM component and playback of digital rights management ("DRM")-protected video using the Widevine Trusted Application. Discovery may reveal additional components of the supervisor in the '735 Patent Accused Products.

90.     Each of the '735 Patent Accused Products comprises a supervisor configured to control access to the at least one digital certificate and the at least one encryption key.

91.     For example, on information and belief the Samsung Galaxy S25 supervisor has a Secure OS component that executes in Secure EL1 with higher privileges and manages the initiation, execution, and switching of Trusted Applications that execute in the Secure EL0 with lesser privileges. The Secure OS provides the software interface for accessing secure hardware storage like the SFS, FTS, and QFPROM fuses, where certificates and keys are stored, and on

information and belief, Trusted Applications must use these supervisor-provided functions to access cryptographic materials.

92.     Each of the '735 Patent Accused Products comprises a supervisor configured to assume control over an output of the screen when the apparatus operates in a secure mode, wherein the secure mode may be a partial screen secure mode or a full screen secure mode.

93.     For example, on information and belief the Samsung Galaxy S25 supervisor has a Trusted User Interface ("TUI") component that operates within the Trusted VM portion of the secure zone.  Also for example, on information and belief, in the Samsung Galaxy S25 playback of digital rights management ("DRM")-protected video using the Widevine Trusted Application plays the video to the entire screen without any indicator displayed.

94.     Each of the '735 Patent Accused Products comprises a supervisor configured to control execution of the task by the secure processor.

95.     For example, on information and belief, in the Samsung Galaxy S25 the Secure OS portion of the supervisor dispatches Samsung Wallet commands to the Visa Pay Trusted Application which executes on the TEE World secure processor.

96.     Each of the '735 Patent Accused Products comprises an indicator operatively controlled by the supervisor.

97.     For example, on information and belief, in the Samsung Galaxy S25 the "Secure mode" shield icon and "Secured by Knox" message are displayed during TUI sessions.

98.     The supervisor in the '735 Patent Accused Products is configured when the apparatus operates in the partial screen secure mode to delegate control of a first portion of the screen to the task executing on the secure processor, display in a second portion of the screen the

information representing the task signer from the at least one of the digital certificate, and activate the indicator.

99.    For example, on information and belief, in the Samsung Galaxy S25 the TUI operating in the Trusted VM is configured to operate a secure PIN input in a first portion of the display screen and display in a second portion of the display a "Secure mode" shield icon and "Secured by Knox" message tied to certificate authentication.



100.    The supervisor in the '735 Patent Accused Products is configured when the apparatus operates in a full screen secure mode to delegate control of the entire screen to the task executing on the secure processor and deactivate the indicator.

101.    For example, on information and belief, in the Samsung Galaxy S25 playback of digital rights management ("DRM")-protected video using the Widevine Trusted Application plays the video to the entire screen without any indicator displayed.

102. The supervisor in the '735 Patent Accused Products is configured when the apparatus operates in a non-secure mode to transfer control over the output of the screen to the non-secure zone.

103. For example, in the Samsung Galaxy S25 once the TUI or Widevine secure interfaces exit, control of the display returns to the non-secure zone, such to Android and client applications running in the Android VM in the Normal world.

104. On information and belief, Samsung has known about the '735 Patent at least since its issuance on August 22, 2017, and at least since the date of interactions between the parties concerning a foreign patent arising from the same application(s) as the '735 Patent. For instance, on information and belief Samsung has been provided with documents demonstrating Fingon's ownership of the '735 Patent. At a minimum, Samsung has knowledge of the '735 Patent at least as of the filing of this Complaint. Samsung has had, and continues to have, the specific intent to infringe, through its deliberate and intentional infringement or, alternatively, through its willfully blind disregard of the '735 Patent by knowing there was a high probability of infringement but taking deliberate actions to avoid confirming that infringement. The filing of this action has also made Samsung aware of the unjustifiably high risk that its actions constituted and continue to constitute infringement of the '735 Patent. On information and belief, discovery will reveal additional facts and circumstances from which Samsung's knowledge and intent to infringe (or willful indifference), both before and after the filing of this action, may be inferred.

105. Further, on information and belief, Samsung has actively induced and/or contributed to infringement of at least Claim 1 of the '735 Patent in violation of at least 35 U.S.C. § 271(b), (c), and (f).

106. Users of the '735 Patent Accused Products directly infringe at least Claim 1 of the '735 Patent when they use the '735 Patent Accused Products in the ordinary, customary, and intended way. On information and belief, Samsung's inducements in violation of 35 U.S.C. § 271(b) include, without limitation and with specific intent to encourage infringement, knowingly inducing consumers to use the '735 Patent Accused Products within the United States in the ordinary, customary, and intended way by, directly or through intermediaries, supplying the '735 Patent Accused Products to consumers within the United States and instructing and encouraging such customers to use the '735 Patent Accused Products in the ordinary, customary, and intended way, which Samsung knew infringes at least Claim 1 of the '735 Patent, or, alternatively, was willfully blind to the infringement.

107. On information and belief, Samsung's inducements in violation of 35 U.S.C. § 271(b) further include, without limitation and with specific intent to encourage the infringement, knowingly inducing customers to commit acts of infringement with respect to the '735 Patent Accused Products within the United States, by, directly or through intermediaries, instructing and encouraging such customers to import, make, use, sell, offer to sell, or otherwise commit acts of infringement with respect to the '735 Patent Accused Products in the United States, which Samsung knew infringes at least Claim 1 of the '735 Patent, or, alternatively, was willfully blind to the infringement.

108. On information and belief, in violation of 35 U.S.C. § 271(c), Samsung's contributory infringement further includes offering to sell or selling within the United States, or importing into the United States, components of the patented invention of at least Claim 1 of the '735 Patent, constituting a material part of the invention. On information and belief, Samsung knows and has known the same to be especially made or especially adapted for use in an

28

infringement of the '735 Patent, and such components are not a staple article or commodity of commerce suitable for substantial noninfringing use.

109.    On information and belief, in violation of 35 U.S.C. § 271(f)(1), Samsung's infringement further includes without authority supplying or causing to be supplied in or from the United States all or a substantial portion of the components of the patented invention of at least Claim 1 of the '735 Patent, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred within the United States.

110.    On information and belief, in violation of 35 U.S.C. § 271(f)(2), Samsung's infringement further includes without authority supplying or causing to be supplied in or from the United States components of the patented invention of at least Claim 1 of the '735 Patent that are especially made or especially adapted for use in the invention and not staple articles or commodities of commerce suitable for substantial noninfringing use, where such components are uncombined in whole or in part, knowing that such components are so made or adapted and intending that such components will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States.

111.    Samsung is not licensed or otherwise authorized to practice the claims of the '735 Patent.

112.    Thus, by its acts, Samsung has injured Fingon and is liable to Fingon for directly and/or indirectly infringing one or more claims of the '735 Patent, whether literally or under the doctrine of equivalents, including without limitation Claim 1.

113.    Accordingly, Samsung's infringement of the '735 Patent has been and continues to be deliberate, intentional, and willful, and this is therefore an exceptional case warranting an award of enhanced damages and attorneys' fees and costs pursuant to 35 U.S.C. §§ 284 and 285.

114.    As a result of Samsung's infringement of the '735 Patent, Fingon has suffered monetary damages, and seeks recovery, in an amount to be proven at trial, adequate to compensate for Samsung's infringement, but in no event less than a reasonable royalty with interest and costs.

115.    On information and belief, Samsung will continue to infringe the '735 Patent unless enjoined by this Court. Samsung's infringement of Fingon's rights under the '735 Patent will continue to damage Fingon, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

**THIRD COUNT**
**(Infringement of U.S. Patent No. 10,270,776)**

116.    Fingon incorporates by reference the allegations set forth in the above paragraphs of the Complaint as though fully set forth herein.

117.    The claims of the '776 Patent are valid and enforceable.

118.    In violation of 35 U.S.C. § 271(a), Samsung has directly infringed and continues to directly infringe one or more claims of the '776 Patent, including at least Claim 1 of the '776 Patent, in the state of Texas, in this judicial district, and elsewhere in the United States by, among other things, making, using, selling, offering for sale, and/or importing into the United States products that embody one or more of the inventions claimed in the '776 Patent, including but not limited to its electronic devices containing SoCs or microprocessors utilizing Qualcomm's implementation of the TrustZone Trusted Execution Environment and hypervisor,[4] such as the

---

[4] *See, e.g.*, Qualcomm, "Qualcomm TEE," *available at*
https://docs.qualcomm.com/bundle/publicresource/topics/80-70015-11/qualcomm-trusted-

Samsung Galaxy S25, as well as Samsung's electronic devices that utilize processors not provided by Qualcomm but which have corresponding functionality, and all reasonably similar products (the "'776 Patent Accused Products").

119.    The '776 Patent Accused Products contain elements identical or equivalent to each claimed element of the patented invention pointed out by at least Claim 1 of the '776 Patent.

120.    Each of the '776 Patent Accused Products comprises an apparatus.

121.    For example, the Samsung Galaxy S25 comprises a mobile smartphone apparatus that includes, for example, a Qualcomm Snapdragon 8 Elite chipset based on ARM technology.

122.    Each of the '776 Patent Accused Products comprises a memory configured to store data.

123.    For example, on information and belief the Samsung Galaxy S25 contains RAM memory regions that are accessible by the Qualcomm chipset and used to store data.

124.    Each of the '776 Patent Accused Products comprises a secure zone.

125.    For example, the Samsung Galaxy S25 provides a secure zone that comprises a Trusted Execution Environment World ("TEE World") and a Trusted Virtual Machine ("Trusted VM"), both of which are isolated from and run completely independently of the Android VM in the ARM "Normal World."

---

execution-environment.html; Qualcomm, "Qualcomm Hypervisor," *available at* https://docs.qualcomm.com/bundle/publicresource/topics/80-70015-11/hypervisor.html.

Qualcomm, "A Developer's Guide to IoT Security Part III: Trusted Execution Environment and Hypervisors," https://www.youtube.com/watch?v=q8x1yP6BWB8

126.    Each of the '776 Patent Accused Products comprises a secure zone interface.

127.    For example, the Samsung Galaxy S25 comprises a secure zone of a Trusted Execution Environment World ("TEE World") and a Trusted Virtual Machine ("Trusted VM"), both of which are isolated from and run completely independently of a non-secure zone comprising an Android VM in the ARM "Normal World." On information and belief, communication between the TEE World secure zone and the non-secure zone occurs through at least the Secure Monitor Call (SMC) interface. Also on information and belief, Trusted VMs also operating in the secure zone have access to the TEE World, thereby also providing an interface.



Qualcomm, "A Developer's Guide to IoT Security Part III: Trusted Execution Environment and Hypervisors," https://www.youtube.com/watch?v=q8x1yP6BWB8

128.    Each of the '776 Patent Accused Products comprises a secure zone configured to execute a task comprising a subtask that communicates one or more data packets over a network.

129.    For example, in the Samsung Galaxy S25 the secure processor for the TEE World and/or the secure processor for the Trusted VM runs tasks, such as Trusted Applications. For example, on information and belief, the Samsung Key Management Software (SKMS) application, which runs in the non-secure zone, invokes the Samsung Key Provisioning Module (SKPM) Trusted Application, and the secure operating system ("Secure OS") running in the TEE World dispatches the commands issued by the SKMS application to the SKPM Trusted Application.  On information and belief, the SKMS application uses the SKPM TA to communicate with a server on the Internet.

130.    Each of the '776 Patent Accused Products comprises a secure zone wherein the memory is cleared of data related to the subtask after executing the subtask.

131.    For example, in the Samsung Galaxy S25 the secure processor for the TEE World and/or the secure processor for the Trusted VM runs tasks, such as Trusted Applications that clear the memory of certain critical data structures to prevent the possibility of that data being leaked.

On information and belief the SKPM TA clears the memory of data related to subtasks by calling a function that overwrites certain memory with zeroes.

132.    Each of the '776 Patent Accused Products comprises a non-secure zone coupled to the secure zone via the interface.

133.    For example, on information and belief the Samsung Galaxy S25 comprises an Android Virtual Machine ("Android VM") in the ARM "Normal World," in which Android and applications execute.



Qualcomm, "A Developer's Guide to IoT Security Part III: Trusted Execution Environment and Hypervisors," https://www.youtube.com/watch?v=q8x1yP6BWB8

134.    Each of the '776 Patent Accused Products comprises a secure zone configured to use network capabilities of the non-secure zone to communicate the one or more data packets over the network according to the subtask.

135.    For example, on information and belief the Samsung Galaxy S25 implements the SKPM Trusted Agent in the secure zone that uses the SKMS agent network capabilities to communicate with a server over the Internet.  Those communications are via HTTPS, which uses data packets sent over the network.

136.    Each of the '776 Patent Accused Products comprises network capabilities of the non-secure zone that receive the data packets communicated from the secure zone via the interface.

137.    For example, on information and belief the Samsung Galaxy S25 implements the SKMS agent receives data packets from the SKPM TA for use by the network capabilities via the SMC interface.

138.    On information and belief, Samsung has known about the '776 Patent at least since its issuance on April 23, 2019, and at least since the date of interactions between the parties concerning a foreign patent arising from the same application(s) as the '776 Patent. For instance, on information and belief Samsung has been provided with documents demonstrating Fingon's ownership of the '776 Patent. At a minimum, Samsung has knowledge of the '776 Patent at least as of the filing of this Complaint. Samsung has had, and continues to have, the specific intent to infringe, through its deliberate and intentional infringement or, alternatively, through its willfully blind disregard of the '776 Patent by knowing there was a high probability of infringement but taking deliberate actions to avoid confirming that infringement. The filing of this action has also made Samsung aware of the unjustifiably high risk that its actions constituted and continue to constitute infringement of the '776 Patent. On information and belief, discovery will reveal additional facts and circumstances from which Samsung's knowledge and intent to infringe (or willful indifference), both before and after the filing of this action, may be inferred.

139.    Further, on information and belief, Samsung has actively induced and/or contributed to infringement of at least Claim 1 of the '776 Patent in violation of at least 35 U.S.C. § 271(b), (c), and (f).

140.    Users of the '776 Patent Accused Products directly infringe at least Claim 1 of the '776 Patent when they use the '776 Patent Accused Products in the ordinary, customary, and

intended way. On information and belief, Samsung's inducements in violation of 35 U.S.C. § 271(b) include, without limitation and with specific intent to encourage infringement, knowingly inducing consumers to use the '776 Patent Accused Products within the United States in the ordinary, customary, and intended way by, directly or through intermediaries, supplying the '776 Patent Accused Products to consumers within the United States and instructing and encouraging such customers to use the '776 Patent Accused Products in the ordinary, customary, and intended way, which Samsung knew infringes at least Claim 1 of the '776 Patent, or, alternatively, was willfully blind to the infringement.

141.    On information and belief, Samsung's inducements in violation of 35 U.S.C. § 271(b) further include, without limitation and with specific intent to encourage the infringement, knowingly inducing customers to commit acts of infringement with respect to the '776 Patent Accused Products within the United States, by, directly or through intermediaries, instructing and encouraging such customers to import, make, use, sell, offer to sell, or otherwise commit acts of infringement with respect to the '776 Patent Accused Products in the United States, which Samsung knew infringes at least Claim 1 of the '776 Patent, or, alternatively, was willfully blind to the infringement.

142.    On information and belief, in violation of 35 U.S.C. § 271(c), Samsung's contributory infringement further includes offering to sell or selling within the United States, or importing into the United States, components of the patented invention of at least Claim 1 of the '776 Patent, constituting a material part of the invention.  On information and belief, Samsung knows and has known the same to be especially made or especially adapted for use in an infringement of the '776 Patent, and such components are not a staple article or commodity of commerce suitable for substantial noninfringing use.

143.    On information and belief, in violation of 35 U.S.C. § 271(f)(1), Samsung's infringement further includes without authority supplying or causing to be supplied in or from the United States all or a substantial portion of the components of the patented invention of at least Claim 1 of the '776 Patent, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred within the United States.

144.    On information and belief, in violation of 35 U.S.C. § 271(f)(2), Samsung's infringement further includes without authority supplying or causing to be supplied in or from the United States components of the patented invention of at least Claim 1 of the '776 Patent that are especially made or especially adapted for use in the invention and not staple articles or commodities of commerce suitable for substantial noninfringing use, where such components are uncombined in whole or in part, knowing that such components are so made or adapted and intending that such components will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States.

145.    Samsung is not licensed or otherwise authorized to practice the claims of the '776 Patent.

146.    Thus, by its acts, Samsung has injured Fingon and is liable to Fingon for directly and/or indirectly infringing one or more claims of the '776 Patent, whether literally or under the doctrine of equivalents, including without limitation Claim 1.

147.    Accordingly, Samsung's infringement of the '776 Patent has been and continues to be deliberate, intentional, and willful, and this is therefore an exceptional case warranting an award of enhanced damages and attorneys' fees and costs pursuant to 35 U.S.C. §§ 284 and 285.

148.   As a result of Samsung's infringement of the '776 Patent, Fingon has suffered monetary damages, and seeks recovery, in an amount to be proven at trial, adequate to compensate for Samsung's infringement, but in no event less than a reasonable royalty with interest and costs.

149.   On information and belief, Samsung will continue to infringe the '776 Patent unless enjoined by this Court. Samsung's infringement of Fingon's rights under the '776 Patent will continue to damage Fingon, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

## FOURTH COUNT
## (Infringement of U.S. Patent No. 10,484,338)

150.   Fingon incorporates by reference the allegations set forth in the above paragraphs of the Complaint as though fully set forth herein.

151.   The claims of the '338 Patent are valid and enforceable.

152.   In violation of 35 U.S.C. § 271(a), Samsung has directly infringed and continues to directly infringe one or more claims of the '338 Patent, including at least Claim 1 of the '338 Patent, in the state of Texas, in this judicial district, and elsewhere in the United States by, among other things, making, using, selling, offering for sale, and/or importing into the United States products that embody one or more of the inventions claimed in the '338 Patent, including but not limited to its electronic devices containing SoCs or microprocessors utilizing Qualcomm's implementation of the TrustZone Trusted Execution Environment and hypervisor,[5] such as the Samsung Galaxy S25, as well as Samsung's electronic devices that utilize processors not provided

---

[5] See, e.g., Qualcomm, "Qualcomm TEE," available at https://docs.qualcomm.com/bundle/publicresource/topics/80-70015-11/qualcomm-trusted-execution-environment.html; Qualcomm, "Qualcomm Hypervisor," available at https://docs.qualcomm.com/bundle/publicresource/topics/80-70015-11/hypervisor.html.

by Qualcomm but which have corresponding functionality, and all reasonably similar products (the "'338 Patent Accused Products").

153.    The '338 Patent Accused Products contain elements identical or equivalent to each claimed element of the patented invention pointed out by at least Claim 1 of the '338 Patent.

154.    Each of the '338 Patent Accused Products comprises an apparatus.

155.    For example, the Samsung Galaxy S25 comprises a mobile smartphone apparatus that includes, for example, a Qualcomm Snapdragon 8 Elite chipset based on ARM technology.

156.    Each of the '338 Patent Accused Products comprises a screen.

157.    For example, the Samsung Galaxy S25 includes a display screen used to render secure and non-secure content.

158.    Each of the '338 Patent Accused Products comprises an indicator.

159.    For example, on information and belief, in the Samsung Galaxy S25 the "Secure mode" shield icon and "Secured by Knox" message are displayed during certain Samsung Wallet sessions.

160.    Each of the '338 Patent Accused Products comprises a non-secure zone.

161.    For example, the Samsung Galaxy S25 comprises an Android Virtual Machine ("Android VM") in the ARM "Normal World," in which Android and applications execute.



Qualcomm, "A Developer's Guide to IoT Security Part III: Trusted Execution Environment and Hypervisors," https://www.youtube.com/watch?v=q8x1yP6BWB8

162.    Each of the '338 Patent Accused Products comprises a secure zone.

163.    For example, the Samsung Galaxy S25 provides a secure zone that comprises a Trusted Execution Environment World ("TEE World") and a Trusted Virtual Machine ("Trusted VM"), both of which are isolated from and run completely independently of the Android VM in the ARM "Normal World."



Qualcomm, "A Developer's Guide to IoT Security Part III: Trusted Execution Environment and Hypervisors," https://www.youtube.com/watch?v=q8x1yP6BWB8

164.    Each of the '338 Patent Accused Products comprises a secure zone that comprises a non-volatile storage configured to store at least one digital certificate and at least one encryption key.

165.    For example, on information and belief the Samsung Galaxy S25 includes at least the Qualcomm Secure File System ("SFS"), Qualcomm Fast Trusted Storage ("FTS"), Samsung Knox Vault storage, and Qualcomm QFPROM fuses that store certificates and keys for authentication. On information and belief, the SFS and FTS are accessed by the TEE World and/or the Trusted VM through secure mechanisms. On information and belief, the QFPROM fuses store hash values, which serve as a unique identifier that cryptographically represents a task signer, enabling verification of the task signer's identity.



**SFS**

SFS provides confidentiality, integrity, and anti-rollback support to TA and securely stores sensitive data. Any file created or stored under SFS is covered by anti-rollback protection. The SFS feature:

- Uses an encryption key for each TA to ensure the confidentiality of the files.
- Uses an HMAC key for each TA to verify the integrity of the files.

Both the encryption and HMAC keys are derived using a device unique key, which depends on the secure boot state of the device. The SFS anti-rollback protection is enabled by default.

When the devices are secure boot enabled, the SFS uses unique hardware keys for file data encryption and decryption to ensure they are secure from each other.

https://docs.qualcomm.com/bundle/publicresource/topics/80-70014-11/secure-file-system.html



- Fast Trusted Storage (FTS). FTS provides trusted apps in Qualcomm Trusted Execution Environment with similar encryption service. Compared to SFS, it trades random file access for higher data throughput to the secure storage. FTS does not support rollback protection, hence data that is vulnerable to replay attacks should be stored in SFS.

https://www.qualcomm.com/content/dam/qcomm-martech/dm-assets/documents/guard_your_data_with_the_qualcomm_snapdragon_mobile_platform2.pdf



As a core component of the Knox security platform, Knox Vault is an isolated, tamper-proof, secure subsystem with its own processor and memory. It also includes an interface to dedicated, non-volatile secure storage, which provides a secure location for storing sensitive data, such as cryptographic keys and credentials. Knox Vault can:

- Store sensitive data such as hardware-backed Android Keystore keys, the Knox Device Health Attestation Key (SAK), biometric data, and blockchain credentials.

**Credential Storage**

This feature securely stores data encrypted by the Knox Vault Processor in the Knox Vault Storage. A secure channel is used to protect data transferred between the Knox Vault Processor and the Knox Vault Storage.

The following data is stored in the Knox Vault Storage:

- Cryptographic keys to protect biometric data
- Blockchain keystore credentials
- Knox Device Health Attestation Key (SAK)

All data in credential storage is encrypted using a Knox Vault-unique key. This prevents the data from being decrypted in other devices.

**StrongBox Keymaster Support**

The StrongBox Keymaster is a key management module supporting various cryptographic algorithms that can be used by applications to generate keys and perform cryptographic operations with them.

The Android framework provides a KeyStore API for applications to use the StrongBox Keymaster. All keys generated by the StrongBox Keymaster or imported into it are encrypted with the unique key of Knox Vault. Thus, these keys cannot be decrypted outside of the StrongBox Keymaster running on the Knox Vault Processor.

**Knox Vault unique key**

The Knox Vault unique key is written into one-time-programmable bits. This unique key is used for protecting keys imported into or generated in the Knox Vault Subsystem. Thus, a key generated in Knox Vault on one device cannot be used outside of that device.

**Knox Vault Storage**

The Knox Vault Storage is a dedicated, secure, non-volatile memory device that stores sensitive data such as the following:

- Cryptographic keys such as Blockchain keys and Device keys
- Biometric data
- Hashed authentication credentials

Like the Knox Vault Processor, the Knox Vault Storage is designed to prevent various physical and side-channel attacks, using its own secure processor, SRAM, ROM, cryptographic module, and hardware monitor which detects physical tampering.

https://docs.samsungknox.com/admin/fundamentals/whitepaper/samsung-knox-mobile-security/system-security/knox-vault/

166.    Each of the '338 Patent Accused Products comprises a secure zone that comprises a secure processor configured to execute a task comprising task certificate information representing a task signer.

167.    For example, on information and belief, in the Samsung Galaxy S25 the Secure OS operates on the TrustZone processor which is in the TEE world, as enforced by TrustZone hardware.  The Secure OS executes tasks Trusted Applications ("TAs,"). The ELF files for the TAs include metadata information representing the task signer.  Also for example, on information and belief, in the Samsung Galaxy S25 the Trusted VM operates in the secure zone and executes a Trusted User Interface (TUI) which includes information representing the task signer.

168.    Each of the '338 Patent Accused Products comprises a secure zone that comprises a supervisor.

169.    For example, the Samsung Galaxy S25 provides a supervisor through the Secure OS component, which manages Trusted Applications and enforces policies in the Samsung Galaxy S25, and components which manage secure screen operations in the Samsung Galaxy S25, such as the Trusted User Interface ("TUI") components in the Trusted VM component and playback of digital rights management ("DRM")-protected video using the Widevine Trusted Application. Discovery may reveal additional components of the supervisor in the '338 Patent Accused Products.

170.    Each of the '338 Patent Accused Products comprises a supervisor configured to control access to the at least one digital certificate and the at least one encryption key.

171.    For example, on information and belief the Samsung Galaxy S25 supervisor has a Secure OS component that executes in Secure EL1 with higher privileges and manages the initiation, execution, and switching of Trusted Applications that execute in the Secure EL0 with lesser privileges. The Secure OS provides the software interface for accessing secure hardware storage like the SFS, FTS, and QFPROM fuses, where certificates and keys are stored, and on information and belief, Trusted Applications must use these supervisor-provided functions to access cryptographic materials.

172.    Each of the '338 Patent Accused Products comprises a supervisor configured to assume control over an output of the screen when the apparatus operates in a secure mode and to transfer control over the output of the screen to the non-secure zone when the apparatus operates in a non-secure mode.

173.    For example, on information and belief the Samsung Galaxy S25 supervisor comprises a Trusted User Interface ("TUI") component that operates within the Trusted VM portion of the secure zone. The TUI assumes control over the output to the screen and afterwards returns control of the screen to the non-secure zone.

174.    Each of the '338 Patent Accused Products comprises a supervisor configured to control operation of the indicator, wherein the supervisor activates the indicator when the apparatus operates in the secure mode and deactivates the indicator when the apparatus operates in the non-secure mode.

175.    For example, on information and belief, the "Secured by Knox" message and "Secure mode" shield icon are displayed during secure zone TUI sessions and deactivated otherwise.



176.    On information and belief, Samsung has known about the '338 Patent at least since its issuance on November 19, 2019, and at least since the date of interactions between the parties

concerning a foreign patent arising from the same application(s) as the '338 Patent. For instance, on information and belief Samsung has been provided with documents demonstrating Fingon's ownership of the '338 Patent. At a minimum, Samsung has knowledge of the '338 Patent at least as of the filing of this Complaint. Samsung has had, and continues to have, the specific intent to infringe, through its deliberate and intentional infringement or, alternatively, through its willfully blind disregard of the '338 Patent by knowing there was a high probability of infringement but taking deliberate actions to avoid confirming that infringement. The filing of this action has also made Samsung aware of the unjustifiably high risk that its actions constituted and continue to constitute infringement of the '338 Patent. On information and belief, discovery will reveal additional facts and circumstances from which Samsung's knowledge and intent to infringe (or willful indifference), both before and after the filing of this action, may be inferred.

177.    Further, on information and belief, Samsung has actively induced and/or contributed to infringement of at least Claim 1 of the '338 Patent in violation of at least 35 U.S.C. § 271(b), (c), and (f).

178.    Users of the '338 Patent Accused Products directly infringe at least Claim 1 of the '338 Patent when they use the '338 Patent Accused Products in the ordinary, customary, and intended way. On information and belief, Samsung's inducements in violation of 35 U.S.C. § 271(b) include, without limitation and with specific intent to encourage infringement, knowingly inducing consumers to use the '338 Patent Accused Products within the United States in the ordinary, customary, and intended way by, directly or through intermediaries, supplying the '338 Patent Accused Products to consumers within the United States and instructing and encouraging such customers to use the '338 Patent Accused Products in the ordinary, customary, and intended

way, which Samsung knew infringes at least Claim 1 of the '338 Patent, or, alternatively, was willfully blind to the infringement.

179.    On information and belief, Samsung's inducements in violation of 35 U.S.C. § 271(b) further include, without limitation and with specific intent to encourage the infringement, knowingly inducing customers to commit acts of infringement with respect to the '338 Patent Accused Products within the United States, by, directly or through intermediaries, instructing and encouraging such customers to import, make, use, sell, offer to sell, or otherwise commit acts of infringement with respect to the '338 Patent Accused Products in the United States, which Samsung knew infringes at least Claim 1 of the '338 Patent, or, alternatively, was willfully blind to the infringement.

180.    On information and belief, in violation of 35 U.S.C. § 271(c), Samsung's contributory infringement further includes offering to sell or selling within the United States, or importing into the United States, components of the patented invention of at least Claim 1 of the '338 Patent, constituting a material part of the invention.  On information and belief, Samsung knows and has known the same to be especially made or especially adapted for use in an infringement of the '338 Patent, and such components are not a staple article or commodity of commerce suitable for substantial noninfringing use.

181.    On information and belief, in violation of 35 U.S.C. § 271(f)(1), Samsung's infringement further includes without authority supplying or causing to be supplied in or from the United States all or a substantial portion of the components of the patented invention of at least Claim 1 of the '338 Patent, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred within the United States.

182.    On information and belief, in violation of 35 U.S.C. § 271(f)(2), Samsung's infringement further includes without authority supplying or causing to be supplied in or from the United States components of the patented invention of at least Claim 1 of the '338 Patent that are especially made or especially adapted for use in the invention and not staple articles or commodities of commerce suitable for substantial noninfringing use, where such components are uncombined in whole or in part, knowing that such components are so made or adapted and intending that such components will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States.

183.    Samsung is not licensed or otherwise authorized to practice the claims of the '338 Patent.

184.    Thus, by its acts, Samsung has injured Fingon and is liable to Fingon for directly and/or indirectly infringing one or more claims of the '338 Patent, whether literally or under the doctrine of equivalents, including without limitation Claim 1.

185.    Accordingly, Samsung's infringement of the '338 Patent has been and continues to be deliberate, intentional, and willful, and this is therefore an exceptional case warranting an award of enhanced damages and attorneys' fees and costs pursuant to 35 U.S.C. §§ 284 and 285.

186.    As a result of Samsung's infringement of the '338 Patent, Fingon has suffered monetary damages, and seeks recovery, in an amount to be proven at trial, adequate to compensate for Samsung's infringement, but in no event less than a reasonable royalty with interest and costs.

187.    On information and belief, Samsung will continue to infringe the '338 Patent unless enjoined by this Court. Samsung's infringement of Fingon's rights under the '338 Patent will continue to damage Fingon, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

## FIFTH COUNT
### (Infringement of U.S. Patent No. 11,201,869)

188.    Fingon incorporates by reference the allegations set forth in the above paragraphs of the Complaint as though fully set forth herein.

189.    The claims of the '869 Patent are valid and enforceable.

190.    In violation of 35 U.S.C. § 271(a), Samsung has directly infringed and continues to directly infringe one or more claims of the '869 Patent, including at least Claim 1 of the '869 Patent, in the state of Texas, in this judicial district, and elsewhere in the United States by, among other things, making, using, selling, offering for sale, and/or importing into the United States products that embody one or more of the inventions claimed in the '869 Patent, including but not limited to its electronic devices containing SoCs or microprocessors utilizing Qualcomm's implementation of the TrustZone Trusted Execution Environment and hypervisor,[6] such as the Samsung Galaxy S25, as well as Samsung's electronic devices that utilize processors not provided by Qualcomm but which have corresponding functionality, and all reasonably similar products (the "'869 Patent Accused Products").

191.    The '869 Patent Accused Products contain elements identical or equivalent to each claimed element of the patented invention pointed out by at least Claim 1 of the '869 Patent.

192.    Each of the '869 Patent Accused Products comprises an apparatus.

193.    For example, the Samsung Galaxy S25 comprises a mobile smartphone apparatus that includes, for example, a Qualcomm Snapdragon 8 Elite chipset based on ARM technology.

194.    Each of the '869 Patent Accused Products comprises a secure zone.

---

[6] *See, e.g.*, Qualcomm, "Qualcomm TEE," *available at* https://docs.qualcomm.com/bundle/publicresource/topics/80-70015-11/qualcomm-trusted-execution-environment.html; Qualcomm, "Qualcomm Hypervisor," *available at* https://docs.qualcomm.com/bundle/publicresource/topics/80-70015-11/hypervisor.html.

195.    For example, the Samsung Galaxy S25 provides a secure zone that comprises a Trusted Execution Environment World ("TEE World") and a Trusted Virtual Machine ("Trusted VM"), both of which are isolated from and run completely independently of the Android VM in the ARM "Normal World."



Qualcomm, "A Developer's Guide to IoT Security Part III: Trusted Execution Environment and Hypervisors," https://www.youtube.com/watch?v=q8x1yP6BWB8&t=5s

196.    Each of the '869 Patent Accused Products comprises an interface to a non-secure zone.

197.    For example, the Samsung Galaxy S25 comprises a secure zone of a Trusted Execution Environment World ("TEE World") and a Trusted Virtual Machine ("Trusted VM"), both of which are isolated from and run completely independently of a non-secure zone comprising an Android VM in the ARM "Normal World." On information and belief, communication between the TEE World secure zone and the non-secure zone occurs through at least the Secure Monitor Call (SMC) interface. Also on information and belief, Trusted VMs also operating in the secure zone have access to the TEE World, thereby also providing an interface.

Qualcomm, "A Developer's Guide to IoT Security Part III: Trusted Execution Environment and Hypervisors," https://www.youtube.com/watch?v=q8x1yP6BWB8

198.    Each of the '869 Patent Accused Products comprises a secure processor.

199.    For example, in the Samsung Galaxy S25 the secure processor for the TEE World and/or the secure processor for the Trusted VM runs tasks, such as Trusted Applications. For example, on information and belief, the SKMS application, which runs in the non-secure zone, invokes the SKPM TA, and the secure operating system ("Secure OS") running in the TEE World dispatches the commands issued by the SKMS application to the SKPM TA.

200.    Each of the '869 Patent Accused Products comprises a memory.

201.    For example, on information and belief the Samsung Galaxy S25 contains RAM memory regions accessible by the Qualcomm chipset.

202.    Each of the '869 Patent Accused Products comprises a secure processor configured to execute a task having one or more subtasks, wherein the task and the subtasks have respective executable code for one or more secure transactions.

203.    For example, in the Samsung Galaxy S25 the secure processor for the TEE World and/or the secure processor for the Trusted VM runs tasks, such as Trusted Applications. For example, on information and belief, the SKMS application is a Near-Field Communication (NFC)

transaction application, runs in the non-secure zone, and invokes the SKPM Trusted Application, and the secure operating system ("Secure OS") running in the TEE World dispatches the commands issued by the SKMS application to the SKPM Trusted Application. On information and belief, the SKMS application uses the SKPM TA to securely communicate with a server on the Internet as part of the NFC secure transaction.

204.    Each of the '869 Patent Accused Products comprises a secure processor configured to store a state of the task into the memory of the secure zone.

205.    For example, on information and belief, in the Samsung Galaxy S25 the secure processor for the TEE World and/or the secure processor for the Trusted VM runs tasks, such as the SKPM Trusted Application that stores data related to subtasks called by the SKPM TA.

206.    Each of the '869 Patent Accused Products comprises a secure processor configured to clear the memory of data related to the first subtask after executing the first subtask, and switch execution to the executable code of the task based on the state of the task stored in the memory.

207.    For example, on information and belief, in the Samsung Galaxy S25 the secure processor for the TEE World and/or the secure processor for the Trusted VM runs tasks, such as the SKPM Trusted Application that clears the memory of certain critical data structures to prevent the possibility of that data being leaked. On information and belief the SKPM TA clears the memory of data related to subtasks by calling a function that overwrites certain memory with zeroes. Furthermore, on information and belief, the secure processor switches execution back to the SKPM TA following the execution and completion of various subtasks.

208.    On information and belief, Samsung has known about the '869 Patent at least since its issuance on December 14, 2021, and at least since the date of interactions between the parties concerning a foreign patent arising from the same application(s) as the '869 Patent. For instance,

on information and belief Samsung has been provided with documents demonstrating Fingon's ownership of the '869 Patent. At a minimum, Samsung has knowledge of the '869 Patent at least as of the filing of this Complaint. Samsung has had, and continues to have, the specific intent to infringe, through its deliberate and intentional infringement or, alternatively, through its willfully blind disregard of the '869 Patent by knowing there was a high probability of infringement but taking deliberate actions to avoid confirming that infringement. The filing of this action has also made Samsung aware of the unjustifiably high risk that its actions constituted and continue to constitute infringement of the '869 Patent. On information and belief, discovery will reveal additional facts and circumstances from which Samsung's knowledge and intent to infringe (or willful indifference), both before and after the filing of this action, may be inferred.

209.    Further, on information and belief, Samsung has actively induced and/or contributed to infringement of at least Claim 1 of the '869 Patent in violation of at least 35 U.S.C. § 271(b), (c), and (f).

210.    Users of the '869 Patent Accused Products directly infringe at least Claim 1 of the '869 Patent when they use the '869 Patent Accused Products in the ordinary, customary, and intended way. On information and belief, Samsung's inducements in violation of 35 U.S.C. § 271(b) include, without limitation and with specific intent to encourage infringement, knowingly inducing consumers to use the '869 Patent Accused Products within the United States in the ordinary, customary, and intended way by, directly or through intermediaries, supplying the '869 Patent Accused Products to consumers within the United States and instructing and encouraging such customers to use the '869 Patent Accused Products in the ordinary, customary, and intended way, which Samsung knew infringes at least Claim 1 of the '869 Patent, or, alternatively, was willfully blind to the infringement.

211.    On information and belief, Samsung's inducements in violation of 35 U.S.C. § 271(b) further include, without limitation and with specific intent to encourage the infringement, knowingly inducing customers to commit acts of infringement with respect to the '869 Patent Accused Products within the United States, by, directly or through intermediaries, instructing and encouraging such customers to import, make, use, sell, offer to sell, or otherwise commit acts of infringement with respect to the '869 Patent Accused Products in the United States, which Samsung knew infringes at least Claim 1 of the '869 Patent, or, alternatively, was willfully blind to the infringement.

212.    On information and belief, in violation of 35 U.S.C. § 271(c), Samsung's contributory infringement further includes offering to sell or selling within the United States, or importing into the United States, components of the patented invention of at least Claim 1 of the '869 Patent, constituting a material part of the invention.  On information and belief, Samsung knows and has known the same to be especially made or especially adapted for use in an infringement of the '869 Patent, and such components are not a staple article or commodity of commerce suitable for substantial noninfringing use.

213.    On information and belief, in violation of 35 U.S.C. § 271(f)(1), Samsung's infringement further includes without authority supplying or causing to be supplied in or from the United States all or a substantial portion of the components of the patented invention of at least Claim 1 of the '869 Patent, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred within the United States.

214.    On information and belief, in violation of 35 U.S.C. § 271(f)(2), Samsung's infringement further includes without authority supplying or causing to be supplied in or from the

United States components of the patented invention of at least Claim 1 of the '869 Patent that are especially made or especially adapted for use in the invention and not staple articles or commodities of commerce suitable for substantial noninfringing use, where such components are uncombined in whole or in part, knowing that such components are so made or adapted and intending that such components will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States.

215.    Samsung is not licensed or otherwise authorized to practice the claims of the '869 Patent.

216.    Thus, by its acts, Samsung has injured Fingon and is liable to Fingon for directly and/or indirectly infringing one or more claims of the '869 Patent, whether literally or under the doctrine of equivalents, including without limitation Claim 1.

217.    Accordingly, Samsung's infringement of the '869 Patent has been and continues to be deliberate, intentional, and willful, and this is therefore an exceptional case warranting an award of enhanced damages and attorneys' fees and costs pursuant to 35 U.S.C. §§ 284 and 285.

218.    As a result of Samsung's infringement of the '869 Patent, Fingon has suffered monetary damages, and seeks recovery, in an amount to be proven at trial, adequate to compensate for Samsung's infringement, but in no event less than a reasonable royalty with interest and costs.

219.    On information and belief, Samsung will continue to infringe the '869 Patent unless enjoined by this Court. Samsung's infringement of Fingon's rights under the '869 Patent will continue to damage Fingon, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action for all issues triable by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and seeks relief from Samsung as follows:

a. For judgment that Samsung has infringed and continues to infringe the claims of the '348, '735, '776, '338, and '869 Patents;

b. For a permanent injunction against Samsung and its respective officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all other acting in active concert therewith from infringement of the '348, '735, '776, '338, and '869 Patents;

c. For an accounting of all damages sustained by Plaintiff as a result of Samsung's acts of infringement;

d. For a mandatory future royalty payable on each and every future sale by Samsung of a product that is found to infringe one or more of the Asserted Patents and on all future products which are not colorably different from products found to infringe;

e. For a judgment and order finding that Samsung's infringement is willful and awarding to Plaintiff enhanced damages pursuant to 35 U.S.C. § 284;

f. For a judgment and order requiring Samsung to pay Plaintiff's damages, costs, expenses, and pre- and post-judgment interest for its infringement of the '348, '735, '776, '338, and '869 Patents as provided under 35 U.S.C. § 284 and without limitation under 35 U.S.C. § 287;

g.  For a judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiff its reasonable attorneys' fees; and

h.  For such other and further relief in law and in equity as the Court may deem just and proper.

Dated: November 5, 2025                    Respectfully Submitted,

                                           _/s/ Garland Stephens by permission Claire Henry_
                                           Garland Stephens
                                             LEAD ATTORNEY
                                             Texas Bar No. 24053910
                                             garland@bluepeak.law
                                           Richard Koehl
                                             Texas Bar No. 24115754
                                             richard@bluepeak.law
                                           BLUE PEAK LAW GROUP LLP
                                           3139 West Holcombe Blvd, PMB 8160
                                           Houston, TX  77025
                                           Telephone: 281-972-3036

                                           Robert Magee (to be _admitted pro hac vice_)
                                             robert@bluepeak.law
                                           BLUE PEAK LAW GROUP LLP
                                           3790 El Camino Real, PMB 846
                                           Palo Alto, CA 94306
                                           Telephone: (281) 972-3036

                                           Of Counsel:

                                           Claire Abernathy Henry
                                             Texas State Bar No. 24053063
                                           Garrett C. Parish
                                             Texas State Bar No. 24125824
                                           **MILLER FAIR HENRY PLLC**
                                           1507 Bill Owens Pkwy.
                                           Longview, TX 75604
                                           Tel: (903) 757-6400
                                           claire@millerfairhenry.com
                                           garrett@millerfairhenry.com

                                           _Attorneys for Plaintiff Fingon, LLC_